1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11

CHRISTINA McCUNE,

CASE NO. 10-cv-5074RJB-JRC

12

Plaintiff,

REPORT AND RECOMMENDATION

v.

13

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

Noted for March 25, 2011

14
15

Defendant.

16

17       This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28

18    U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4); and, as authorized by

19    Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976).  This matter has been

20    fully briefed. (See ECF Nos. 23, 39, 42.)

21

22       After considering and reviewing the record, the undersigned finds that the ALJ failed to

23    evaluate properly the medical evidence. The ALJ improperly rejected the opinion of a treating

24    physician, relied on speculation and inappropriate conclusions, and failed to explain why

25    significant, probative evidence was rejected.

26

BACKGROUND

Plaintiff was born on June 23, 1964. (Tr. 69.) Plaintiff finished 11th grade, but quit school during her senior year, because of "problems related to family life and a boyfriend." (Tr. 375.) Around this time, according to plaintiff, due to her problems with her mother, her boyfriend, and a previous rape, she tried to commit suicide "by taking all the pills [she] could find." (Tr. 375, 455.) Plaintiff was unable to acquire her G.E.D. after taking some classes, as it was "too difficult and too expensive." (Id.)

Although plaintiff's history includes repeated weekend use of alcohol, as of November, 2004, her "last drink was six months ago when she had one beer." (Id.) Plaintiff appears to be motivated to minimize her use of alcohol due to her strong memories of her alcoholic mother. (See Tr. 456.) Although plaintiff tried marijuana once, "she didn't like it." (Id.) Plaintiff also reports an extremely high sensitivity to medications, refused vicodin multiple times in the record, and contends that she cannot take even "regular pain pills as they would always make her vomit." (Tr. 375, 443, 444.)

Plaintiff cares for a son who receives government assistance. (Tr. 459.) Plaintiff and her son's father divorced after plaintiff's ex-husband concluded that he was a homosexual. (Tr. 442.) Plaintiff remained friends with her ex-husband and was grieving his death from a motorcycle accident shortly before plaintiff moved to Washington, around April, 2003. (Tr. 442.)

Plaintiff has work experience tending bar in restaurants and doing pedicures for senior citizens. (Tr. 14, 340.)

PROCEDURAL HISTORY

On January 29, 2003, plaintiff filed applications for social security and supplemental security income benefits, alleging disability since May 1, 2000. (Tr. 69-72.) Plaintiff's

applications were denied initially, and on reconsideration. (Tr. 60-61, 63-66.) On October 27, 2004 plaintiff filed an application for disability insurance benefits, and on October 28, 2004, she applied for supplemental security income. (Tr. 12.)  Plaintiff's applications were denied initially and on reconsideration. (Tr. 53-54, 56-59, 550-51.) Plaintiff requested a hearing, and a video hearing was held on December 18, 2007 before Administrative Law Judge Marguerite Schellentrager (hereinafter "the ALJ"). (Tr. 566-605.) On March 4, 2008, the ALJ issued a decision in which she found plaintiff not disabled. (Tr. 12-28.)

On September 26, 2008, plaintiff filed a statement of contention with the Appeals Council, and requested an additional thirty days within which to submit new evidence. (Supp. Tr. 3-4.) In approximately May, 2009, plaintiff submitted over sixty-eight pages of medical records, many of which were dated after the decision by the ALJ. (See ECF No. 33, p. 2.) On December 2, 2009, the Appeals Council denied plaintiff's request for review, making the March 4, 2008 written decision by the ALJ the final decision subject to judicial review.

On August 13, 2010, the Appeals Council sent plaintiff a letter, indicating that it had considered evidence dated March 23, 2008, and evidence of results covering the period from April 11, 2007 through March 3, 2008. (Supp. Tr. 1.) This information is included in the administrative record. However, the Appeals Council also "looked at medical records covering the period March 5, 2008 through January 1, 2009." (Id.) Apparently, because this new information related to a period of time after the ALJ's decision, the Appeals Council indicated its conclusion that this second set of new evidence did "not affect the decision about whether you were disabled .  .  .  .  before March 4, 2008." (Id.)

On February 4, 2010, plaintiff filed the underlying complaint, seeking review of the March 4, 2008 written decision by the ALJ. (ECF No. 3.) On April 30, 2010, the Commissioner

REPORT AND RECOMMENDATION - 3

filed a Sealed Administrative Record with the Court. (See ECF No. 9.) On June 16, 2010, the attorney for plaintiff contacted the attorney for defendant to inform her that the transcript was missing evidence that had been submitted to the Appeal Council. (See ECF No 24, at p. 2.) On September 17, 2010, defendant filed a Sealed Administrative Record (ECF No. 20), which still did not include the portion of the evidence sent to the Appeal Council that was dated after the decision by the ALJ. (See id.) On November 17, 2010, plaintiff filed a motion to correct the record, seeking inclusion of the portion of the evidence sent to the Appeal Council that was dated after the decision by the ALJ. (See ECF No. 24.) On January 18, 2011, the court denied plaintiff's motion to correct the record, finding that the new material at issue was not considered by the Appeals Council in the context of denying plaintiff's request for review and that it therefore may not be considered properly by the court. (ECF No. 37.)

Plaintiff contends that her case should be reversed and/or remanded for the following reasons:

1. The ALJ failed to evaluate properly the medical evidence.

2. The ALJ failed to evaluate properly the lay evidence

3. The ALJ failed to evaluate properly plaintiff's credibility and evidence.

4. The ALJ failed to evaluate properly whether or not plaintiff suffered from any severe impairments.

5. The Appeals Council erred by failing to remand plaintiff's claim based on new evidence.

(Plaintiff's Opening Brief, ECF No. 23, at pp. 4-22.) Plaintiff also contends that if this case is remanded for a new hearing, it should be assigned to a different ALJ. (Id. at p. 23.)

1

STANDARD OF REVIEW

2           Plaintiff bears the burden of proving disability within the meaning of the Social Security

3   Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing*

4   Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the

5   "inability to engage in any substantial gainful activity" due to a physical or mental impairment

6   "which can be expected to result in death or which has lasted, or can be expected to last for a

7   continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

8   Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that

9   plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and

10  work experience, engage in any other substantial gainful activity existing in the national

11  economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094,

12  1098-99 (9th Cir. 1999).

13

14          Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of

15  social security benefits if the ALJ's findings are based on legal error or not supported by

16  substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th

17  Cir. 2005) (*citing* Tidwell, 161 F.3d at 601). "Substantial evidence" is more than a scintilla, less

18  than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as

19  adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)

20  (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402

21  U.S. 389, 401 (1971).

22

23

24

25

26

REPORT AND RECOMMENDATION - 5

1

<u>DISCUSSION</u>

2

    1.  <u>The ALJ failed to evaluate properly the medical evidence.</u>

3

    "A treating physician's medical opinion as to the nature and severity of an individual's

4

impairment must be given controlling weight if that opinion is well-supported and not

5

inconsistent with other substantial evidence in the case record." <u>Edlund v. Massanari</u>, 253 F.3d

6

1152, 1157 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); <u>see also</u> 20 C.F.R. § 416.902

7

(nontreating physician is one without "ongoing treatment relationship"). The decision must

8

"contain specific reasons for the weight given to the treating source's medical opinion, supported

9

by the evidence in the case record, and must be sufficiently specific to make clear to any

10

subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR

11

LEXIS 9. However, "[t]he ALJ may disregard the treating physician's opinion whether or not

12

that opinion is contradicted." <u>Batson v. Commissioner of Social Security Administration</u>, 359

13

F.3d 1190, 1195 (9th Cir. 2004) (*quoting* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.

14

1989)).

15

    The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

16

opinion of either a treating or examining physician or psychologist. <u>Lester v. Chater</u>, 81 F.3d

17

821, 830 (9th Cir. 1995) (*citing* <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991); <u>Pitzer v.</u>

18

<u>Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)); <u>see also</u> <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158-

19

59 (9th Cir. 2001) ("the ALJ erred in failing to meet, either explicitly or implicitly, the standard

20

of clear and convincing reasons required to reject an uncontradicted opinion of an examining

21

psychologist") (*citing* <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)).  Even if a treating or

22

examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

23

legitimate reasons that are supported by substantial evidence in the record."  <u>Lester</u>, 81 F.3d at

24

25

26

830-31 (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Reddick</u>, 157 F.3d at 830-31 (*citing* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. <u>Reddick</u>, 157 F.3d at 831 (*citing* <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id</u>. (*quoting* <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) (*citing* <u>Magallanes</u>, 881 F.2d at 751; <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999)). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830 (citations omitted); <u>see also</u> 20 C.F.R. § 404.1527(d). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* <u>Lester</u>, <u>supra</u>, 81 F.3d at 831).

1

2

3          a.   Dr. Peggy A. Hosford, M.D., treating physician (November 6, 2002 - June, 23, 2003)

4          Dr. Peggy A. Hosford, M.D., (hereinafter "Dr. Hosford"), examined and treated plaintiff

5    on November 6, 2002; November 21, 2002; December 5, 2002; January 23, 2003; January 29,

6    2003; February 22, 2003; April 21, 2003; and June, 23, 2003 (Tr. 441-47, 508-510.) After taking

7    a history and conducting examinations, Dr. Hosford concluded that plaintiff suffered from

8    depression (Tr. 441, 442, 443, 445), chronic dyspepsia (Tr. 443, 447), chronic joint pain (Tr.

9    443), fibromyalgia syndrome and probably chronic fatigue (Tr. 444), and urticaria (Tr. 445),

10         The ALJ gave little weight to the opinion by Dr. Hosford for three stated reasons. (Tr.

11   25.) One reason for the little weight given to Dr. Hosford's opinion was the ALJ's conclusion

12   that "since [Dr. Hosford's] opinion was offered prior to any treatment, [Dr. Hosford] apparently

13   relied quite heavily on the subjective report of symptoms and limitation provided by the

14   claimant, and seemed to uncritically accept as true most, if not all, of what [plaintiff] reported."

15   (Tr. 25.) It is unclear which "opinion" by Dr. Hosford the ALJ asserts was offered prior to any

16   treatment.  However, if the ALJ refers to the opinion by Dr. Hosford that the ALJ quotes just

17   prior to making this conclusion, i.e. that plaintiff "is unable to work at any job," the court notes

18   that this opinion was offered on November 21, 2002 (Tr. 510), and Dr. Hosford had treated

19   plaintiff previously on November 6, 2002 (Tr. 447). Regardless of which "opinion" the ALJ is

20   referring to in her decision, the court notes that Dr. Hosford began treating plaintiff following Dr.

21   Hosford's first examination of plaintiff (Tr. 447), and did not offer any opinion before that date.

22   In addition, the conclusion that Dr. Hosford "seemed to uncritically accept as true most, if not

23   all, of what [plaintiff] reported," also does not have any evidentiary support in the record. (Tr.

24   25.) Dr. Hosford includes in her opinion statements such as "patient states that she thinks the

1    Effexor XR is working well" (Tr. 443); that "[plaintiff] says she doesn't think the medication is

2    working" (Tr. 442); and that "[plaintiff] states that when she was switched from the Zyrtec to the

3    generic Loratadine her symptoms flared up" (Tr. 441). Contrary to the conclusion by the ALJ,

4    these statements demonstrate that Dr. Hosford did not "uncritically accept as true" what plaintiff

5    reported, but noted that these were plaintiff's assertions, and not conclusions by Dr. Hosford.

6    The court concludes that these findings by the ALJ regarding Dr. Hosford's opining before

7    treating, and uncritically accepting plaintiff's assertions, are not based on substantial evidence in

8    the record as a whole. (See Tr. 441-47, 508-10.)

9         The next reason supplied by the ALJ for the "little weight" given to the treating

10   physician, Dr. Hosford, was that Dr. Hosford "later acknowledge[d] that [plaintiff's] medications

11   were working well and that her symptoms were related to being the family caretaker (internal

12   citation to Exhibit F, pp. 86-89), not to her impairments." (Tr. 25.) However, the conclusion that

13   Dr. Hosford acknowledged that "[plaintiff's] medications were working well" is belied by the

14   fact that every single page cited by the ALJ in support of this assertion includes a change in

15   plaintiff's medication: "Will try changing her antidepressant" (Tr. 444, "p. 86"); "Will increase

16   her Effexor" (Tr. 443, "p. 87"); "we have increased her Effexor up to 225 mg daily. After

17   discussion we are also going to try to taper her Topamax" (Tr. 442, "p. 88"); "Will put her on

18   Augmentin 875 mg bid for two weeks . . . . Will switch her back to Zyrtec" (Tr. 441, "p. 89").

19   The court also notes that the final evaluation cited by the ALJ to support her conclusion that Dr.

20   Hosford acknowledged that "[plaintiff's] medications were working well" includes Dr.

21   Hosford's conclusion that "[plaintiff] has failed on the trial of Loratadine." (Tr. 441, "p.89").

22   This evaluation also includes plaintiff's report that "her depression is sort of manageable on the

1  Effexor SR 225 mg qd, but not really great." (Id.) Contrary to the finding by the ALJ, Dr.
2  Hosford did not "acknowledge [that] [plaintiff's] medications were working well." (Tr. 25.)
3      In addition, the conclusion by the ALJ that Dr. Hosford "later acknowledge[d] that
4  [plaintiff's] . . . . symptoms were related to being the family caretaker (internal citation to
5  Exhibit F, pp. 86-89), not to her impairments," (Tr. 25), also is not supported by substantial
6  evidence in the record as a whole. On January 29, 2003, Dr. Hosford noted that plaintiff was
7  "very worried about not being able to care for her mother, grandmother, and sister, as well as her
8  son. She apparently is the one that ends up doing a lot of the work around the house because the
9  other household members are somewhat disabled as well." (Tr. 444.) On January 29, 2003, Dr.
10 Hosford noted that plaintiff is "sort of the caregiver for the whole crew." (Tr. 442). Although Dr.
11 Hosford mentions that plaintiff has caretaking responsibilities, there is no indication that Dr.
12 Hosford "acknowledged" that plaintiff's "symptoms were related to being the family caretaker"
13 and "not to [plaintiff's] impairments." (Tr. 25.)
14      The third stated reason supplied by the ALJ in support of giving little weight to the
15 opinion by Dr. Hosford was the ALJ's conclusion that Dr. Hosford's report was "internally
16 inconsistent" because Dr. Hosford opined that plaintiff was "unable to work at any job," but also
17 opined that plaintiff would be "severely limited" for 26 weeks. (Id.) The ALJ does not explain
18 how these opinions by Dr. Hosford are inconsistent, and it is a logical conclusion that a person
19 who will be severely limited for 26 weeks may also be unable to work any job. The ALJ does not
20 supply any other evidence in support of the conclusion that Dr. Hosford's opinion is internally
21 inconsistent. The court concludes that the finding by the ALJ that Dr. Hosford's opinion is
22 internally inconsistent is not supported by substantial evidence in the record as a whole. (See Tr.
23 441-47, 508-10.)

REPORT AND RECOMMENDATION - 10

1

2   The court concludes that the reasons supplied by the ALJ to give Dr. Hosford's opinion

3   "little weight" are not legitimate reasons supported by substantial evidence in the record. Even if

4   the court assumes that the opinion of Dr. Hosford was contradicted, when a treating physician's

5   opinion is contradicted, the opinion still "can only be rejected for specific and legitimate reasons

6   that are supported by substantial evidence in the record."  Lester, 81 F.3d at 830-31. Therefore,

7   the ALJ erred in her evaluation of the medical opinion provided by treating physician, Dr.

8   Hosford.  See id.

9

10          b.   The DSHS ("Department of Social and Health Services") health care providers,
                 Nurse Terry Mallory, ARNP, and Dr. Kimberly Wheeler, Ph.D.

11          Regarding the medical opinion evidence supplied by Nurse Terry Mallory, ARNP,

12   (hereinafter "Nurse Mallory") and Dr. Kimberly Wheeler, Ph.D., (hereinafter "Dr. Wheeler") the

13   ALJ made conclusions that are not supported by substantial evidence in the record as a whole,

14   such as that "DSHS opinions are likely accommodations opinions rather than opinions on

15   residual functional capacity and the ability to work" and that the DSHS opinions in the current

16   case departed "substantially from the rest of the evidence of record." (Tr. 26.) Also, the ALJ's

17   conclusion that Nurse Mallory's opinion was "internally inconsistent" because it contained an

18   assessment of permanent disability yet also noted plaintiff's "excellent response to Lithium,"

19   was an erroneous conclusion not supported by substantial evidence in the record as a whole.

20   When an ALJ's findings are "not supported by substantial evidence in the record as a whole,"

21   such as the ALJ's findings here regarding the DSHS medical opinions, "this court may set aside

22   the Commissioner's denial of social security benefits." See Bayliss, supra, 427 F.3d at 1214 n.1;

23   see also Magallanes, supra, 881 F.2d at 750.

24

25

26

1      In addition, the court also notes that the ALJ appeared to rely on speculation instead of

2  evidence in the record (see 20 C.F.R. §§ 404.953(a), 416.1453(a)) when discrediting the DSHS

3  opinions in the following manner:

> *It is also possible* that the providers expressed the opinions found in the
> disability forms in an effort to assist a patient with whom he or she
> sympathizes for one reason or another. Another reality is that patients *can be*
> quite insistent and demanding in seeking supportive notes or reports from their
> physicians, *who might* provide such a note in order to satisfy their patient's
> requests and avoid unnecessary doctor/patient tension.

(Tr. 26 (emphases added).) Here, although the ALJ offered some evidence to support the

assertion that these medical opinions were internally inconsistent, the ALJ did not cite any

evidence in the record to support the contention that Nurse Mallory or Dr. Wheeler had an

inappropriate motivation for the medical opinions they offered. When an ALJ does not provide

specific evidence in the record to support a conclusion that the information in a medical opinion

was provided for an inappropriate reason, the ALJ, in her written decision denying benefits,

"may not assume that doctors routinely lie in order to help their patients collect disability

benefits." Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (*quoting* Ratto v. Secretary, 839

F.Supp. 1415, 1426 (D. Or. 1993)); see also Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir.

1996) (the context of a consultative examination being provided at the request of claimant's

attorney is only relevant "where the opinion itself provides grounds for suspicion as to its

legitimacy").

### c.  Fibromyalgia

On October 13, 2003, Dr. Katherine H. Brewer, M.D., (hereinafter "Dr. Brewer"),

diagnosed plaintiff as having fibromyalgia. (Tr. 351.) On April 11, 2007, Nurse Mallory

1    conducted a comprehensive examination of plaintiff. (Tr. 261-64.) As part of this examination,

2    Nurse Mallory conducted a musculoskeletal examination ("msk"). (Tr. 262.) Nurse Mallory

3    noted her assessment that plaintiff suffered "generalized myofacial (sic) tenderness – all points

4    pos[i]tive," and assessed fibromyalgia. (Tr. 242, 262, 263.)

5            The ALJ noted plaintiff's allegation of fibromyalgia, and that Dr. Yun Sun Choe, M.D.,

6    assessed plaintiff as having fibromyalgia. (Tr. 16.) The ALJ also noted the assessment of

7    fibromyalgia by Nurse Mallory. (Tr. 18, 19-20.) However, the ALJ concluded that plaintiff does

8    not have fibromyalgia. (Tr. 20.) The ALJ concluded that although "[t]hroughout the file,

9    [plaintiff] has complained of severe constant pain "all day, all over" due to fibromyalgia," this

10   condition was not "clearly established." (Tr. 21.) In making her determination that plaintiff does

11   not have fibromyalgia, the ALJ failed to mention the diagnosis of fibromyalgia by Dr. Brewer.

12   (See Tr. 351.) The ALJ also failed to mention the objective evidence of fibromyalgia provided

13   by the comprehensive physical evaluation of plaintiff by Nurse Mallory. (Tr. 262.) The ALJ did

14   not provide any reasons for rejecting the diagnosis by Dr. Brewer of fibromyalgia. When

15   evidence of an impairment exists in the record, such as a diagnosis of fibromyalgia by a M.D.,

16   and objective evidence supporting the diagnosis also exists in the record, such as myofascial

17   tenderness based on a physical examination, the ALJ must explain why "significant probative

18   evidence has been rejected." Vincent, supra, 739 F.2d at 1394-95. The ALJ committed legal

19   error by rejecting without explanation the diagnosis by Dr. Brewer of fibromyalgia, and the

20   objective evidence provided by Nurse Mallory's examination supporting this diagnosis. See id.

21           For the aforementioned reasons, the court concludes that the ALJ's findings regarding the

22   medical opinion evidence are based on legal error and that the decision of defendant regarding

23   plaintiff's disability therefore should be reversed. See Bayliss, supra, 427 F.3d at 1214 n.1;

REPORT AND RECOMMENDATION - 13

1    Magallanes, supra, 881 F.2d at 750; see also Lester, supra, 81 F.3d at 832; Nguyen, supra, 100

2    F.3d at 1264.

3

4            2.   Following remand, the ALJ should evaluate anew the lay evidence.

5

6            "In determining whether a claimant is disabled, an ALJ must consider lay witness

7    testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security

8    Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing Dodrill v. Shalala, 12 F.3d 915, 919

9    (9th Cir. 1993)).  Lay witness testimony "is competent evidence and 'cannot be disregarded

10   without comment.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v.

11   Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Lay testimony as to a claimant's symptoms is

12   competent evidence that an ALJ must take into account, unless the ALJ expressly determines to

13   disregard such testimony and gives reasons germane to each witness for doing so.  Bruce, 557

14   F.3d at 1115; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Nguyen, 100 F.3d at 1467

15   (citing Dodrill, 12 F.3d at 919).  "[W]here the ALJ"s error lies in a failure to properly discuss

16   competent lay testimony favorable to the claimant, a reviewing court cannot consider the error

17   harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the

18   testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

19

20           Here, the ALJ gave "little weight" to the lay witness testimony provided by plaintiff's

21   mother, Ms. Whetsel, "because [Ms. Whetsel] has a direct financial interest in [plaintiff's]

22   receipt of benefits." (Tr. 22.) Although it is true that financial incentive is a relevant

23   consideration when making a determination regarding credibility, any financial incentive only

24   demonstrates that the lay witness has a reason to be other than truthful, it does not provide any

25   evidence that the lay witness is not being truthful. In other words, it does not logically follow

26

that any individual who has a reason to be less than truthful necessarily will be less than truthful. The court notes that this factor is the only factor cited by the ALJ in support of her determination to give little weight to the testimony provided by Ms. Whetsel.  In addition, as this case should be remanded for further consideration in order to allow the ALJ to consider properly the medical evidence, the ALJ may make a different conclusion regarding what weight to give the lay witness statements provided by Ms. Whetsel after conducting a proper review of the medical evidence. Therefore, on remand, the ALJ should reevaluate the lay witness testimony provided by Ms. Whetsel.

      3.   <u>Following remand, the ALJ should reevaluate plaintiff's credibility</u>

The ALJ's determination regarding plaintiff's credibility likely was affected by the aforementioned errors in the ALJ's conclusions regarding the medical evidence. Therefore, on remand, the ALJ should evaluate anew plaintiff's credibility.

      4.   <u>Following remand, the ALJ should reevaluate whether or not plaintiff has any severe impairments.</u>

Similarly, the ALJ's findings regarding whether or not plaintiff suffers from any severe impairments also likely was affected adversely by her improper evaluation of the medical evidence. Therefore, on remand, the ALJ should evaluate anew whether or not plaintiff suffers from any severe impairments

      5.   <u>Following remand, the ALJ should consider the new evidence presented to the Appeals Council.</u>

The Court does not review the decision of the Appeal Council to deny review and remand based upon new evidence. <u>Woodsum v. Astrue</u>, 711 F. Supp. 2d 1239, 1248 (W.D. Wn. 2010) ("'our statutory jurisdiction is confined to review of the 'final decision of the Secretary''") (adopting reasoning of, and *quoting*, <u>Browning v. Sullivan</u>, 958 F.2d 817, 822 (8th Cir. 1992)

(*quoting* 42 U.S.C. § 405(g))). However, when a plaintiff contends that remand is appropriate in light of additional evidence first presented to the Appeal Council, in order to "justify remand under th[e] standard [recently utilized by the Ninth Circuit], a claimant must show that the additional evidence was both "new" and "material" to determining disability, and that he or she 'had good cause for having failed to produce that evidence earlier.'" Woodsum, 711 F. Supp. 2d at 1250-51 (*quoting* Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001)).

Although plaintiff has not met the standard required in order to justify remand, see Woodsum, supra, 711 F.Supp.2d at 1250-51; Mayes, supra, 276 F.3d at 462, as this case should be remanded in order to allow for a proper evaluation of the medical evidence, the ALJ should consider the new evidence following remand.

   6.  Plaintiff has not established any conflict of interest or valid reason for disqualification.

Administrative Law Judges, ALJs, "are presumed to be unbiased." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). To rebut this presumption, one must show a "conflict of interest or some other specific reason for disqualification." Id. at 857-58 (*citing* Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999)). Although ALJs occasionally can reveal irritation or anger, "'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women … sometimes display,' do not establish bias." Rollins, 261 F.3d 858 (*quoting* Liteky v. United States, 510 U.S. 540, 555-56 (1994)).

Plaintiff contends that the language used by the ALJ in this case casts doubt on the capability of the ALJ to consider fairly plaintiff's disability claim. (ECF No. 23, p. 22.) In support of plaintiff's request for a new ALJ following remand, plaintiff contends that although plaintiff "is not accusing the ALJ of having been prejudiced in the decision which is the subject of this appeal, [] [plaintiff] believes that the ALJ's improper rejection of all of the evidence

supporting her claim could likely result in the ALJ being prejudiced if this case is remanded for a new hearing." (Id.)

Although this court has concluded that the ALJ improperly rejected medical evidence supporting plaintiff's claim, this fact does not compel disqualification of the ALJ. When a plaintiff cannot show a "conflict of interest or some other specific reason for disqualification," an ALJ is "presumed to be unbiased." Rollins, supra, 261 F.3d at 857-58. Here, plaintiff has not demonstrated any valid reason for disqualification of the ALJ. See id.

CONCLUSION

The ALJ failed to consider properly the medical evidence, which may have affected the findings regarding whether or not plaintiff suffered from any severe impairments. For this reason, the Court should reverse and remand this matter for further consideration by the Social Security Administration, beginning at step two of the sequential disability evaluation.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 25, 2011, as noted in the caption.

Dated this 3rd day of March, 2011.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17